**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEVERE HALL,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 05-975** |
| | : | |
| **SGT. JOSEPH GALIE, et al.,** | : | |
| **Defendants** | : | |
| | : | |

**MEMORANDUM AND ORDER**

Pratter, J.                                                                                    March 17, 2009

## I.      INTRODUCTION

The resolution of this pending disputed attorneys' fee petition may have an impact upon

certain categories of pro se prisoner litigation in this District and the lawyers who answer the pro

bono call to take on such litigation on a plaintiff's behalf.

Plaintiff Devere Hall filed a lawsuit against the City of Philadelphia, the Philadelphia

Police Department, Police Commissioner Sylvester Johnson, Lt. Joseph McHugh, Sgt. Joseph

Galie, Officer Jacob Abrokwa, and Officer Calvin Harrison.  Mr. Hall alleged excessive force,

malicious prosecution, false arrest and false imprisonment, as well as a number of state law

claims arising from his arrest and prosecution following a domestic disturbance.  Initially, Mr.

Hall filed his complaint pro se.  Eventually, after the case had been pending 15 months, private

counsel agreed to accept an appointment to serve as Mr. Hall's counsel through this District's

program to facilitate the representation of pro se litigants in such cases.[1]

---

[1] The legal profession has many members who generously share their time, talents and
treasure with others who are less fortunate.  Lawyers in Philadelphia have a long-standing and

After Mr. Hall agreed to the dismissal of a number of the original defendants, the case proceeded to trial against Sgt. Galie, Officer Abrokwa and Officer Harrison in July 2008.  After three days of trial, the jury found in favor of Mr. Hall and against only Sgt. Galie on a single count of unlawful seizure and false imprisonment and awarded $5,100.00 in damages.  The Court entered judgment in accordance with the jury's verdict, including judgment in favor of the Defendants on the three causes of action and in favor of Officers Abrokwa and Harrison in all respects.

Following the trial, Mr. Hall's lawyers filed a Motion for Attorneys' Fees and Costs (Doc. No. 100) seeking payment of $179, 709.00 in fees and $3,191.80 in costs.  The defense

---

rightful claim to occupy some of the highest professional pedestals reserved for those who assist unpopular or impecunious litigants.  See William Safire, "Philadelphia Lawyers," New York Times Magazine, Oct. 13, 1996 (explaining the origin of the term "Philadelphia lawyer" and telling the story of how Andrew Hamilton represented John Peter Zenger in a libel trial against the colonial governor when no other lawyer would do so).  The Court joins all of the judges in this District in acknowledging the important display of professionalism and, in many instances, sacrifices made by attorneys who participate in the Prisoner Civil Rights Panel program in the Eastern District of Pennsylvania, ably administratively overseen by Stephen D. Brown, Esq. and Samuel W. Silver, Esq..  The Court recognizes that counsel do not volunteer for such cases with the expectation that they will be financially rewarded.  For example, many lawyers take to heart the suggestion that members of the legal profession have what amounts to an unwritten duty to perform pro bono services for members of the community who need but cannot afford services.  See Karen J. Mathis, "Our Serving Profession: ABA Addresses the Nation's Legal Needs Through Public Information and Volunteers," ABA Journal, Dec. 2006.  Their motivation is typically more altruistic.  Their service is appreciated by all concerned.  The fact that this present dispute arises because Mr. Hall's lawyers are pursuing a claim for fees should not detract from the appropriateness of his attorneys sharing in the community's and the Court's appreciation.  They – as did defense counsel – conducted this case with skill and diligence.  The Court hastens to acknowledge that Mr. Hall's counsel has made it clear from the outset of this phase of this litigation that any fee recovery will be dedicated to the Cozen O'Connor Foundation, a charitable foundation dedicated to philanthropic endeavors.  Likewise, the fact that the Court does not grant their petition in full is by no means any criticism of anything counsel did or did not do – indeed, the Court has only compliments for all counsel in this case and looks forward to seeing each of them again in other litigation.

opposes that computation and claims, alternatively, that there is a statutory cap on fees recoverable in this litigation as described infra, or, if there is no such cap, then opposing counsel's fees should be awarded for no greater than $6,757.20 plus $320.00 in costs because of unnecessary or unsuccessful services.

For the reasons set forth below, the Court will grant the motion in part and deny it in part, awarding Plaintiff's counsel fees in the amount of $66,696.74 and costs in the amount of $3,191.80.

## II.    BACKGROUND

At the trial of this case, the jury received evidence of the following:

After Mr. Hall and his then girlfriend, Rochelle Harrison, had an argument in the early hours of April 5, 2003, Ms. Harrison called 911 at approximately 3:28 a.m.  Philadelphia police officers responded to their home, but left without making an arrest.  Roughly four hours later, at approximately 7:23 a.m., Ms. Harrison called 911 again.  Officers Abrokwa and Harrison responded to the house at 7:53 a.m. They found Mr. Hall sitting in a lawn chair on the sidewalk in front of the house.  The officers were uncertain what to do next, so they radioed a request for a police supervisor to come to the site.  However, after speaking separately with Mr. Hall and Ms. Harrison, the officers cancelled their request for a supervisor and left the premises.

Meanwhile, Sgt. Galie reported for work on April 5 between 7:00 a.m. and 7:30 a.m.  He spoke with the prior shift supervisor and learned about the on-going problems at Mr. Hall and Ms. Harrison's house.  Apparently in response to the call from Officers Abrokwa and Harrison (and before the officers cancelled the request for a supervisor), Sgt. Galie headed to the house.

He arrived after the other officers had departed.  He walked past Mr. Hall, who was still sitting in

a lawn chair on the sidewalk, and spoke with Ms. Harrison, who was inside the house. Sgt. Galie

testified that Ms. Harrison told him that Mr. Hall had threatened her.  Sgt. Galie then spoke with

Mr. Hall who, Sgt. Galie maintained, said to him that the police could not protect Ms. Harrison

all the time and that after the police left he intended to kick in the door and injure Ms. Harrison

and her family.  Sgt. Galie contacted police dispatch and requested that Officers Abrokwa and

Harrison return to the house.  When the officers got back to the home, Sgt. Galie instructed them

to arrest Mr. Hall for making terroristic threats.  During the course of the arrest, Mr. Hall was

struck with a baton.  Sgt. Galie and Officer Harrison contend that he was resisting arrest, thus

requiring the officers to use a certain amount of force to effect the arrest, but Mr. Hall denied that

he resisted arrest and alleged that Sgt. Galie beat him severely without cause.

The jury exonerated all the Defendants save Sgt. Galie, whom the jury found liable for

unlawful seizure and false imprisonment, and awarded Mr. Hall $5,100.00 in compensatory

damages.

During the pendency of the case, the parties engaged in various pre-trial discovery,

motion practice and, of course, trial preparation, as well as the trial itself.  Some of the specific

activities will be addressed below in the context of discussing the fees to be authorized.


III.    DISCUSSION

Counsel for Plaintiff Devere Hall filed a Motion for Attorneys' Fees and Costs seeking

$179,709.00 in attorneys' fees and $3,191.80 in costs.  Defendants responded arguing that the

fees should be computed from the baseline of no more than $88,800.00 because the petition for

4

fees must be considered pursuant to the Prison Litigation Reform Act ("PLRA").[2]  Defendants

argue that the PLRA applies, along with its hourly rate fee cap, because Mr. Hall filed suit while

he was an incarcerated prisoner.  They further assert that Plaintiff's attorneys' fees should be

reduced to 10% of the capped amount, i.e., to $8,880.00, based on Plaintiff's limited degree of

success in the trial. Defendants describe Mr. Hall's limited degree of success by pointing out that

Mr. Hall went to trial with four causes of action against three defendants, or, in other words, a

nominally possible 12 claims, of which he succeeded on one.  Defendants also note that the

amount of damages actually awarded was modest.

Plaintiff argues in response that the PLRA does not apply because Mr. Hall's suit

involved only civil rights violations that occurred prior to his incarceration, not claims related to

prison conditions, which the PLRA was created to address.  In a second reply brief, Defendants

counter that even if the PLRA cap does not apply to this case, Plaintiff's counsel are entitled to

no more than $7,077.20 in fees and costs because counsel's bills should be based on lower per-

hour rates, because counsel inadequately documented billed hours, because of the

unreasonableness of counsel's billed hours, and, finally, again because of what the Defendants

describe as Plaintiff's very limited success in this litigation.

---

[2] Pursuant to the PLRA, "the 'reasonable' hourly rate for prisoner civil rights litigation cannot be 'an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18, for payment of court-appointed counsel.'" Hernandez v. Kalinowski, 146 F.3d 196, 201 (3d Cir. 1998) (quoting 42 U.S.C. § 1997e(d)(3)).  The Third Circuit Court of Appeals mandates that the rate to be applied is the rate which is actually paid in the district. Id. Since January 1, 2008, the hourly rate paid in the Eastern District of Pennsylvania pursuant to § 3006A was $100.00 per hour.  Accordingly, for purposes of this Motion the Court will consider the PLRA caps attorneys' fees in this District at $150.00 per hour.

A.      **Legal Standard**

The award of costs and reasonable attorneys' fees in lawsuits brought under the Civil

Rights Act is authorized by 42 U.S.C. §1988.  Where a plaintiff is a "prevailing party," "it is well

settled that [the] plaintiff should recover an award of attorney's fees absent special

circumstances."  Truesdale v. Philadelphia Housing Auth., 290 F.3d 159, 163 (3d Cir. 2002)

(quoting County of Morris v. Nationalist Movement, 273 F.3d 527, 535 (3d Cir. 2001)).  In this

case, Defendants concede that Mr. Hall was a "prevailing party," although a very limited

"prevailing party," when one compares his successful cause of action to the list of claims he

made, compares the very modest damages awarded with the demands, and acknowledges that

most of the Defendants were exonerated. Therefore, the City and Sgt. Galie argue that Plaintiff is

entitled only to a limited amount of attorneys' fees.


B.      **Applicability of the PLRA**

Before evaluating the reasonableness of the hours billed by counsel or the degree of

success in the litigation as it affects any attorneys' fees, the Court must determine whether the

PLRA and its hourly rate fee cap apply at all to this case.

Much confusion about the scope of the PLRA's application stems from inconsistent and,

arguably, unclear phrasing in and structure of the Act itself, at least as to the issue at hand.

Stated simply, the issue is whether the Act applies (1) to all civil rights litigation brought by

anyone who is in prison when suit is commences, or (2) only to litigation that concerns

conditions in or events that transpired in the prison.  The first section of the Act places specific

limitations on prisoners who file lawsuits concerning prison conditions.[3]  However, not all of the

subsequent sections of the Act repeat the limiting "prison conditions" language.  See 42 U.S.C. §

1997e.  Some courts assume that the limits from the first section, i.e., the "prison conditions"

subject matter of the action, must be read into each of the subsequent sections of the Act.  See,

e.g., Robbins v. Chronister, 402 F.3d 1047 (10th Cir. 2005).  Other courts consider the language

of each section of the statute independently, i.e., without the de facto "prison conditions" proviso.

See, e.g., Jackson v. State Board of Pardons and Paroles, 331 F.3d 790 (11th Cir. 2003).

 The statutory language at issue for the Court's consideration in the present dispute comes

from the section of the Act limiting attorneys' fees:

> In any action brought by a prisoner who is confined to any jail, prison, or other
> correctional facility, in which attorney's fees are authorized under section 2 of the
> Revised Statutes of the United States (42 U.S.C. 1988), such fees shall not be awarded,
> except to the extent that....

42 U.S.C. § 1997e(d).  This section does not expressly limit its applicability only to cases

challenging prison conditions.  However, if the limiting language from 42 U.S.C. § 1997e(a) is

understood to apply to all subsequent sections of the PLRA, then 42 U.S.C. § 1997e(d) would fix

PLRA limits on attorneys' fees only in cases "brought with respect to prison conditions."

 The Third Circuit Court of Appeals has not directly addressed whether PLRA limits on

attorneys' fees apply to any civil rights case of any sort filed by an incarcerated person or apply

only to cases expressly challenging "prison conditions."  Some arguably instructive case law

---

[3] Section (a) of the Act reads as follows:
No action shall be brought with respect to prison conditions under section 1979 of the Revised
Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined
in any jail, prison, or other correctional facility until such administrative remedies as are
available are exhausted.
42 U.S.C. § 1997e(a).

suggests that the Third Circuit Court of Appeals would not limit PLRA application only to cases filed by prisoners challenging prison conditions, but other cases suggest that our appellate court also would not accept blanket application of PLRA limits on attorneys' fees to all civil rights cases filed by incarcerated persons.

For example, in considering whether the PLRA filing fee payment provision applied to a plaintiff who filed a lawsuit four days prior to his release, our court of appeals noted that "[c]ourts have recognized that 'if a litigant is a prisoner on the day he files a civil action, the PLRA applies.'"  Drayer v. Attorney Gen. of Delaware, 81 F. App'x 429, 431 (3d Cir. 2003) (non-precedential) (quoting In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)[4]).  Accordingly, in Drayer, the court held that the plaintiff in that case could not escape paying the filing fees required under the PLRA merely because he had been released from prison prior to paying the fees.  Id.  See also, Robbins v. Switzer, 104 F.3d 895, (7th Cir. 1997) (same) ("His current status does not alter the fact that he was a prisoner when he first filed the appeals.")  However, upon close analysis of the defendants named in Drayer, it appears that the plaintiff sued because of some condition related to his incarceration.[5]  Thus, Drayer does not appear to provide

---

[4]The plaintiff in In re Smith filed a petition for a writ of prohibition attempting to correct his parole files and seeking compensatory and punitive damages stemming from the alleged errors. 114 F.3d 1247, 1248.  The plaintiff did not challenge prison conditions, but rather challenged the parole process.  The court held that "because Smith's petition includes compensatory and punitive damage claims under the Privacy Act...that are civil in nature, and was filed after the effective date of the PLRA while he was still in prison, the fee requirements of the PLRA apply."  Id. at 1250.  Accordingly, the D.C. Circuit Court of Appeals applied the PLRA to a case challenging something other than prison conditions.

[5]The defendants in Drayer included the Delaware Attorney General, the Bureau Chief of Prisons, Sussex Corrections Institute, Warden Kearny, Department of Parole and Probation.  Although the Drayer opinion does not explain why the plaintiff filed suit or the underlying claims he intended to pursue, based on the identity of the defendants, it is not necessarily unreasonable

8

unshakeable justification for applying the PLRA fee cap to Mr. Hall's case, given that Mr. Hall's claims all involved allegations of civil rights violations that occurred *before* his incarceration and had nothing to do with prison conditions at all.

Another Third Circuit Court of Appeals case, Santana v. United States, 98 F.3d 752 (3d Cir. 1996), sheds some additional light on a potentially related or instructive issue.  In Santana, the appellate court held that PLRA filing fee payment requirements do not apply to *in forma pauperis* habeas corpus petitions and appeals.  Id. at 753.[6]  The court observed that the meaning of the phrase "civil action" as used in the PLRA is not plain.  See id. at 754.  Considering the potential for confusion, the court warned:

> Although we do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison conditions, we agree with the Second Circuit that, where a claim is not analogous to such a suit, the PLRA should be applied with caution.

Id. at 756 (citing Reyes v. Keane, 90 F.3d 676 (2d Cir. 1996)[7] (holding that the PLRA does not

---

to assume the suit is related on some level to his conditions of incarceration.

[6] This holding was based at least in part on the fact that Congress passed the Antiterrorism and Effective Death Penalty Act two days before passing the PLRA, thus suggesting that the AEDPA, not the PLRA, should restrict petitions for writs of habeas corpus. See Santana, 98 F.3d at 755.

[7] Holding that the PLRA does not apply to petitions for a writ of habeas corpus, the Second Circuit Court of Appeals noted:
> We do not suggest that the only civil actions to which the PLRA applies are prisoners' suits seeking relief from prison officials because of prison conditions.  The PLRA covers the general run of civil actions, regardless of the claim and regardless of the identity of the defendants.  Our point here, as in Nagy, is the more limited one that in determining whether the PLRA should be construed to cover special proceedings like habeas corpus petitions and mandamus applications against judges, prison condition lawsuits provide a contrasting useful example of the *primary purpose* of the PLRA.

Reyes, 90 F.3d at 678 n.1 (emphasis added).

apply to petitions for a writ of habeas corpus)).

The only case in this Circuit in which the plaintiff was not directly challenging prison conditions, but where the court applied § 1997(e)(d) to cap attorneys' fees, is Hopper v. Rinaldi, 2008 U.S. Dist. LEXIS 15641 (D.N.J. February 28, 2008).  The plaintiff, while incarcerated, filed a § 1983 claim alleging that prior to his incarceration he had been unlawfully arrested by police officers acting outside their geographical jurisdiction.  Considering a motion to dismiss, the court in Hopper followed the standard of review required under PLRA without explanation of why the Act should apply to a case involving allegations of pre-incarceration civil rights violations.  Id. at 3.  Because the court did not explain why it was applying the PLRA, the case does not provide assistance by way of discourse on the contested issue at hand other than to reflect that at least one court in this circuit applied portions of the PLRA broadly.

The issue is thorny enough to seek guidance from additional sources.  Therefore, the Court will look to other circuits for potential guidance.  The Tenth and Eleventh Circuits Courts of Appeals have issued conflicting opinions as to the reach of PLRA limitations on attorneys' fees.  See Jackson, 331 F.3d 790; Robbins, 402 F.3d 1047.

In Jackson, the Eleventh Circuit Court of Appeals considered whether the PLRA limited attorneys' fees  sought in a prisoner's lawsuit regarding the length of his incarceration.  The plaintiff contended "that § 1997(e)(d) [was] not applicable to his motion for attorney's fees, because his § 1983 action challenged the length of his confinement and not 'prison conditions' within the meaning of § 1997(e)(a)."  331 F.3d at 794.  The defendant had argued "that because [the plaintiff's] § 1983 action was 'brought by a prisoner,' § 1997(e)(d) [was] applicable to his motion for attorney's fees."  Id.

The appellate court considered the meaning of § 1997(e)(d) without addressing the other sections of the PLRA, namely § 1997(e)(a), for additional clarification.   The court considered the plain meaning of the statutory phrase "any action brought by a prisoner" from the text of § 1997(e)(d), and concluded that "any means all."  331 F.3d at 785 (citation omitted).  The appellate court noted that Congress had included the term "prison conditions" in three of the subsections of § 1997(e), see § 1997(e)(a), (c)(1), (f)(1), but did not include the term in other subsections of the PLRA.  See  § 1997(e)(d)(1), (e), (g), (h).  "Clearly, Congress knew how to specify 'prison conditions' and purposefully chose where to do so and where not to do so."  331 F.3d at 796 n.10.  Because § 1997(e)(d) did not include the limiting term "prison conditions," the appellate court determined that it did not need to consider whether or not a case challenging the length of a prisoner's incarceration involved "prison conditions."  Accordingly, the court held that "§ 1997(e)(d)'s phrase 'any action brought by a prisoner' means all lawsuits that are filed by a prisoner and is not restricted to lawsuits challenging 'prison conditions' that are filed by a prisoner."  331 F.3d at 796.  However, by conducting a plain meaning analysis of only one section of the PLRA, the Eleventh Circuit Court of Appeals implicitly determined that there was no need to consider the limitations included in other sections of the PLRA or the legislative history of the Act.

In contrast, in a suit brought by a prisoner alleging pre-incarceration civil rights violations, a situation analogous to the one at hand, the Tenth Circuit Court of Appeals ruled that the PLRA limitations on attorneys fees do not apply to litigation concerning such claims. Robbins, 402 F.3d 1047.  To reach this conclusion, the Robbins court applied the Supreme Court's "absurdity exception" to the plain language rule of statutory construction.  The court

began its analysis by observing that the plain language of § 1997(e)(d) applies a fees cap any time a prisoner brings a civil rights action and is awarded attorneys' fees pursuant to § 1988. The appellate court recognized that when "the language of a statute is clear in its application, the general rule is that we are bound by it." Robbins, 402 F.3d at 1050. However, "where applying the plain language 'would produce an absurd and unjust result which Congress could not have intended,' we need not apply the language in such a fashion." Id. (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 574 (1982)). Further, the "Supreme Court has cautioned against construing a statute literally where the clause in question was added on the Senate floor and the legislative history gave no indication that Congress intended the broad reading the plain language would indicate." Id. at 1052.

Apparently anticipating the appropriateness of invoking one or more justifications for eschewing the "plain language" of the PLRA, the Robbins court looked to the legislative history of the PLRA. The court concluded that with the PLRA Congress intended to "curb frivolous lawsuits brought by prisoners relating to the conditions and circumstances of their incarceration." Robbins, 402 F.3d at 1051. Recognizing that there is a "paucity of information available in the PLRA's legislative history," the court nonetheless cited a number of excerpts from the Congressional Record that recounted that the purpose of the Act was to control prison conditions litigation, not "any and all" litigation filed by incarcerated persons. Id. at 1052, 1054. See, e.g., 141 Cong. Rec. S14408-01, *S14418 (daily ed. Sept. 27, 2995 (statement of Sen. Hatch) ("Our legislation will also help restore balance to prison conditions litigation and will ensure that Federal court orders are limited to remedying actual violations of prisoners' rights...."); 141 Cong. Rec. S14408-01, S14418 (daily ed. Sept. 27, 1995) (statements of Sens. Hatch and Kyl)

12

(discussing different types of prison conditions cases).  Accordingly, the appellate court in

Robbins held that "[c]onstitutional claims arising *before* the events causing the plaintiff's

incarceration are unrelated to prison confinement.  Nor does a pre-existing constitutional claim

fall into the category of 'frivolous prisoner litigation' that Congress was trying to discourage by

its passage of the PLRA."  Robbins, 402 F.3d at 1053 (emphasis in original).  The court held that

it would be absurd to apply PLRA attorneys' fees limitations to the plaintiff's suit for pre-

incarceration civil rights violations merely because the plaintiff was incarcerated at the time he

filed his suit.  Id. at 1054-55.  Stated differently, there is nothing in the statute itself, in the

available legislative history (for those who would find that source instructive) or in the caselaw

that persuades this Court that Congress intended to hang the PLRA on the plaintiff's temporal

status at a single moment in time that can change with the calendar, various reporting dates for

the commencement of incarceration, or Bureau of Prisons policy for early release, as

distinguished from a focus on the substantive issues.

Although Robbins provides persuasive authority for refusing to apply PLRA limitations

to attorneys' fees in cases asserting pre-incarceration civil rights abuses, Third Circuit Court of

Appeals caselaw provides an additional means for reaching the same conclusion via "the whole

act rule."  In a case to consider whether an attorney who successfully represented a prisoner in a

civil rights action was entitled under the PLRA to fees for the time spent preparing a fee petition

("fees on fees") even though such fees are not explicitly provided for under the Act, the Third

Circuit Court of Appeals applied the "whole act rule."  Hernandez v. Kalinowski, 146 F.3d 196

(3d Cir. 1998).  "The whole act rule directs that 'when interpreting a statute, the court will not

look merely to a particular clause in which general words may be used, but will take in

13

connection with it the whole statute (or statutes on the same subject) and the objects and policy

of the law, as indicated by its various provisions, and give to it such a construction as will carry

into execution the will of the Legislature....'" Id. at 200 (quoting Kokoszka v. Belford, 417 U.S.

642, 650 (1974); Brown v. Duchesne, 60 U.S. 183, 194 (1857)).  The court then noted that the

purpose of the PLRA was to deter frivolous prisoner litigation, but that the plaintiff in Hernandez

had prevailed in his action, thus, demonstrating that it was not frivolous.  "The result established

that the prisoner's complaint had substantial merit.  Nothing in the legislative history suggests

that Congress intended to deter meritorious claims.  Thus, an interpretation allowing 'fees on

fees' for meritorious claims serves Congress' intent."  Hernandez, 146 F.3d at 200.

Relying on the whole act rule to decide Mr Hall's lawyers' fee petition, this Court

concludes that PLRA limitations on attorney's fees do not apply to actions based exclusively

upon pre-incarceration civil rights violations.  The first section of the Act specifies that it applies

only to cases "brought with respect to prison conditions."  42 U.S.C. § 1997e(a).  Although the

attorneys' fees provision of the Act does not repeat the prison conditions limitation, under the

whole act rule, the Court must consider each clause in connection with the whole statute.

Because the PLRA opens with a specific prison conditions limitation on the scope of its

applicability, reading this limitation into the rest of the Act is both reasonable and appropriate,[8]

---

[8] Further, as detailed in Robbins, at least one court of appeals has deemed it useful to
conclude that the legislative history establishes that Congress intended to limit frivolous prison
conditions suits, not all suits filed by incarcerated persons.  See Robbins, 402 F.3d 1052, 1054.
Nothing in the scant legislative history of the PLRA suggests that Congress intended to deter
litigation brought by prisoners for civil rights violations that occurred prior to their incarceration.
Moreover, following this Circuit's court of appeals "frivolous" analysis in Hernandez, given that
the jury accepted at least one of Mr. Hall's claims here, it cannot be said that his suit was
"frivolous" in any event.  Thus, the Court concludes that what is important to consider here is the
substance of the claim rather than the status of the litigant at the time an action is commenced.

14

inasmuch as there is no indication to the contrary.  Accordingly, the PLRA fee cap limitations

will not be applied to the attorneys' fees sought in this case.


### C. Computation of Attorneys' Fees

The inapplicability of the PLRA fee cap does not mean that Mr. Hall's lawyers will

necessarily recover all the fees they seek, and the Court's determination to look beyond the Act

does not end the analysis.  Indeed, the Defendants argued in the alternative that opposing

counsel's fees were unreasonable and excessive even if not subject to the PLRA cap.

Even though as a prevailing party Mr. Hall is entitled to recover attorneys' fees and costs,

as the party seeking fees, Mr. Hall has the burden to prove the reasonableness of the claims by

submitting evidence supporting the hours worked and the rates claimed.  Hensley v. Eckerhart,

461 U.S. 424, 433 (1983); Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  The

presiding district court has considerable discretion when evaluating the fee petition and its

component parts.  Bell v. United Princeton Properties, Inc., 884 F.2d 713, 721 (3d Cir. 1989).

One facet of exercising that discretion is to incorporate meaningful consideration of

Plaintiff's "degree of success."  At times, fees can and should be computed only for or as to

successful claims or successful work.  Rode, 892 F.2d at 1183, 1186; Younger v. City of

Philadelphia, 1990 WL 87378, at *3 n.7 (E.D. Pa. June 19, 1990).  However, given the vagaries

of virtually all litigation generally, and civil rights litigation in particular, those instances may be

few and far between.  Indeed, the Court must observe that, while not unique or alone in the

annals of "pro se prisoner" litigation, Mr. Hall's success in any regard puts his case in the distinct

minority of results for such cases.  This case, with its basic fact pattern relating to each of the

causes of action and implicating in some, albeit decidedly varying, degrees all of the Defendants, is a good example of why that is so.  The Court does not consider this case to be an appropriate one for demanding that counsel either (1) convincingly shoehorn their time <u>into</u> descriptions of services that related only to the successful claim and/or to the single culpable Defendant or (2) surgically remove time and services from activities that came to nought in the jury's view.  That is not to say, however, that the results obtained should not be a part of the basis for the Court's exercise of discretion.  <u>Hensley</u>, 416 U.S. at 433-435.  Therefore, while the Court is not inclined to woodenly apply a formulaic ratio based upon the numbers of causes of action and the numbers of defendants or the verdict amount, the Court concludes, particularly where, as here, a verdict cannot be described as a "resounding success," that it is appropriate to take the jury's verdict and damage award into account.  <u>Washington v. Philadelphia County Court of Common Pleas</u>, 89 F.3d 1031, 1041-42 (3d Cir. 1996).

As the Court moves to consider the question of a reasonable fee award, it is useful to delineate certain preliminary principles that are appropriate in this case.  First, the Court notes that one of the defense challenges to the fee petition is based on upon the fact that Mr. Hall could have accepted a pre-trial settlement that was considerably in excess of the damages ultimately awarded, but he did not do so.  However, in the Court's view, a litigant's settlement decision is just that, the litigant's.  Counsel's job is to inform the client about the pros and cons of a proposal and, absent extraordinary or special arrangements or issues not present here, counsel's fees should not be part of the settlement equation or necessarily rise and fall with the client's choices.  In the absence of any suggestion or concern that counsel neglected to do their duty with respect

to communicating with Mr. Hall about settlement proposals,[9] it would be improper and inequitable to penalize counsel via the fee petition for their client's election not to accept Defendants' settlement proposal.

Second, by arguing for significant reductions in the fee award, Defendants implicitly suggest that Mr. Hall's counsel either overstaffed or failed to guard against inefficiencies in handling the case. To be sure, recovery is inappropriate for excessive or redundant fees. Holmes v. Millcreek Township School District, 205 F.3d 583, 595 (3d Cir. 2000). This is also an important consideration where, as here, the payment of the fees has implication for the public weal. The Court shares the concern that fee petition awards in any cases should not encourage either overstaffing or other inefficiencies. However, it is not realistic to expect lawyers taking on prisoner civil rights cases in addition to their other work and obligations to "go it alone" or on a significantly leaner basis than other similar litigation. These competing concerns must be balanced in evaluating this fee petition.

The third preliminary principle that the Court is employing to determine a reasonable fee award in this case is to observe that the Court should be no less rigorous than a client would be in negotiating the fee terms of a professional engagement, recognizing that a client and counsel have the opportunity to confer with each other about fees and time to be expended before, during and after an engagement, while the Court takes up this issue only after the fact.

With all of the foregoing informing the Court's review of Mr. Hall's counsel's fee petition and after closely reviewing the time records submitted with the pending Motion, the

---

[9] The Court knows that in this case counsel was very conscientious in remonstrating with their client about settlement.

Court declines to permit fee recovery for

- 2.2 hours recorded by Mr. Kircher, who appeared to have performed no substantive services in the litigation;

- 8 hours recorded by Mr. Walker for attending two depositions of two of the officer defendants on September 25, 2007 because (1) only Mr. Walker's colleague, Mr. Tarbutton, handled the depositions on behalf of Mr. Hall, (2) Mr. Walker had no substantive role in taking the discovery that day, and (3) both depositions that day took less than 4 hours altogether;

- 4 hours of the 9 hours recorded by Mr. Tarbutton for handling the September 25, 2007 depositions;

- 59 hours of the 79 hours recorded between July 6, 2007 and September 24, 2007 by Mr. Tarbutton for preparing for the two depositions that, together, lasted under 4 hours on September 25, 2007;

- 20 hours of the 79 hours recorded by Mr. Walker for trial preparation;[10]

- 48 hours of the 229 hours recorded by Mr. Tarbutton for trial preparation;[11]

---

[10] This trial was rescheduled and postponed several times. Mr. Walker recorded 18 hours to prepare for the first scheduled trial in December 2007. Presumably, at that point he was "ready to go." Two months later, he recorded 29 hours preparing for the trial scheduled for February 2008. That date was cancelled. Then, for the trial set for July 2008, Mr. Walker recorded another 32 hours of trial preparation. The Court knows that when trial dates are moved, it is necessary to "re-tool" in anticipation of the new date. However, the Court must assume that counsel was ready the first time and would not have needed ever-increasing hours of preparation for the newly set dates.

[11] As explained in footnote 10 above, this trial was scheduled and rescheduled several times. Mr. Tarbutton recorded 41 hours to prepare for the first scheduled trial. He next recorded

- 1.5 hours recorded by Mr. Walker for November 10, 2007 for which there is no description of services;

- 10 hours of the 20 hours recorded by Mr. Tarbutton on December 14 and 16, 2007 described as preparing for a conference with the Court which would not have been so onerous as to demand so much preparation and which itself was a fraction of that time.

Therefore, the Court will accept for consideration the following time recorded by the following professionals and paraprofessionals:

|  | Time Allowed | Claimed Rate |
|---|---|---|
| Mr. Walker | 168.8 | $325/hour |
| Mr. Tarbutton | 268.5 | $275/hour |
| Mr. Luccaro | 2 | $270/hour |
| Ms. Causland | .3 | $110/hour |
| Ms. Grant | 35.5 | $116.14/hour |

The re-figured fee petition at counsel's customary rates[12] for the allowed time amounts to $133,393.47.

---

42 hours for trial preparation and settlement conference activities in January 2008. He then recorded 94 hours to prepare for the rescheduled trial in February 2008. That trial date was cancelled. He recorded another 52 trial preparation hours in June 2008 in anticipation of the trial that went forward. For the same reasons and on a similar basis as set forth in footnote 10 above, the Court feels constrained to reduce the trial preparation time for Mr. Tarbutton.

[12] The Court accepts counsel's rates as being within customary litigation rates charged in Philadelphia by comparable law firms for comparable personnel.

After weighing and balancing all of the matters discussed above, including the propriety of including an overall degree of success factor and recognizing that a number of key events in the litigation, most especially Mr. Hall's own deposition, occurred while Mr. Hall was proceeding pro se,[13] the Court concludes that counsel's fee petition should be approved for 50% of the petition, computed on the basis of counsel's customary rates applied to the allowable hours for an aggregate approved fee of $66,696.74.[14]  Payment of costs in full, namely, $3,191.80, will be approved.

An Order consistent with this Memorandum follows.

BY THE COURT:

  /s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[13] The Court notes that counsel entering this case mid-stream indeed "cuts both ways," making certain issues more challenging to handle, but reducing the number of other necessary activities and services.

[14] Without holding that such alternative configuration would be appropriate for formal application, for simple information and comparison purposes the Court notes that if 2008 PLRA rates were applied to the approved hours, the fee recovery would have been $70,080.97 without regard for any "degree of success."  If the approved fee were to be a multiple of 10 times the actual recovery, then the fee would be $51,000.  And, of course, if this litigation had been subject to a conventional contingent fee engagement, the fee recovery would have been approximately $1,700 (1/3) or $2,040 (40%), without introducing an arithmetic application of the costs into the equation.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEVERE HALL,** | : | **CIVIL ACTION** |
| **Plaintiff** | : | |
| | : | |
| v. | : | **NO. 05-975** |
| | : | |
| **SGT. JOSEPH GALIE, et al.,** | : | |
| **Defendants** | : | |
| | : | |

       **AND NOW**, this 17th day of March 2009, upon consideration of Plaintiff's counsel's

Motion for Attorneys' Fees and Costs (Doc. No. 100), Defendants' Response in Opposition

(Doc. No. 103), Plaintiff's counsel's Reply (Doc. No. 104), and Defendants' Reply (Doc. No.

105), **IT IS HEREBY ORDERED** that the Motion is GRANTED IN PART and DENIED IN

PART, and the Court awards attorneys' fees in the amount of $66,696.74 and costs in the amount

of $3,191.80, for a total award of $69,888.54.

                                      BY THE COURT:

                                        /s/ Gene E.K. Pratter
                                       GENE E.K. PRATTER
                                       UNITED STATES DISTRICT JUDGE